ESTATE OF Minnie HALE, deceased,
Robert V. Hale, Executor,

v.

UNITED STATES of America.

Civ. A. No. 85–102.

United States District Court,
E.D. Kentucky,
Lexington Division.

May 23, 1988.

Charles R. Hembree, Robert E. Maclin, III, Kincaid, Wilson, Schaeffer & Hembree, Lexington, Ky., for plaintiffs.

Robert L. Gordon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

SCOTT REED, District Judge.

This action is before the court on the defendant's motion to dismiss or for summary judgment. The plaintiff having responded thereto, this matter has been fully briefed and is ripe for a decision.

## INTRODUCTION

The parties have filed a very detailed Stipulation of Fact incorporated herein by reference. Furthermore, they are also in agreement that the sole issue for the court's determination is whether, as a matter of law, the Executor of the Estate of Minnie Hale timely filed a claim for a refund of certain gift taxes.

On October 12, 1973, plaintiff paid gift taxes for the first, third, and fourth quarters of 1971 and the first, second and third quarters of 1972. These gift tax payments totalled $30,502.77.

Plaintiff brought this action under Title 28 U.S.C. § 1346 seeking the return of the aforementioned gift taxes in the amount of $30,502.77 that the Estate of Minnie Hale paid on October 12, 1973.

Also on August 9, 1973, the Executor filed a United States Estate Tax Return indicating that the Estate of Minnie Hale had a gross estate tax liability of $64,-839.68. However, on this return, the Executor gave the Estate a credit of $30,502.77 for the gift taxes due.

On October 12, 1973, the Executor paid the gift tax of $30,502.77 and satisfied the estate tax liability of $64,839.68 by (1) a cash payment of $30,508.68; (2) the credit of $30,502.77 for federal gift taxes; and (3) a credit of $3,828.23 for state death taxes. (Stipulation of Fact No. 13).

From the Stipulation of Facts, it seems that this litigation arose out of the following sequence of events:

1. On September 18, 1970, George Hubert Hale executed a general Power of Attorney to his wife, Minnie Hale. Pursuant to this Power of Attorney, Minnie Hale transferred various items of personal and real property from George Hubert Hale to Minnie Hale. Subsequently, Minnie Hale also transferred some of this property from herself to others.

2. Minnie Hale died on December 2, 1972.

3. On December 20, 1972, George Hubert Hale was declared incompetent by the Fayette Circuit Court. On December 22, 1972, Elizabeth Nickell Deaton was appointed Committee for George Hubert Hale.

4. On February 1, 1973, Elizabeth Nickell Deaton, Committee for George Hubert Hale, filed an action against the Executor of the Estate of Minnie Hale in Fayette Circuit Court (Civil Action No. 73–287) demanding that all the property of George Hubert Hale, which was transferred by Minnie Hale under her Power of Attorney, be restored to George Hubert Hale.

5. The judgment entered therein on November 5, 1976 was appealed to the Kentucky Supreme Court and remanded to the Fayette Circuit Court; subsequently, the second opinion of the Fayette Circuit Court was appealed to the Kentucky Court of Appeals, which entered a final opinion on June 19, 1981. The end result of the litigation in the Kentucky court system was that all assets that were transferred from George Hubert Hale to Minnie Hale under her Power of Attorney from George Hubert Hale were required to be restored to the Estate of George Hubert Hale.

6. In the interim between the filing of the action in Fayette Circuit Court on February 1, 1973 by the Committee for George Hubert Hale and the final resolution of the matter on June 19, 1981, the Commissioner of the Internal Revenue Service issued a tax deficiency against the Estate of Minnie Hale on July 26, 1976 in the amount of $46,166.75.

7. Also, during this same period of time before the litigation in the Kentucky state court system was finally resolved, the plaintiff petitioned the United States Tax Court on October 14, 1976 by petition styled *Estate of Minnie Hale, Deceased, Robert V. Hale, Executor v. Commissioner of Internal Revenue,* Docket No. 9431–76, for a redetermination of the deficiency set forth by the Commissioner in his notice of deficiency dated July 26, 1976 and also for a redetermination of the estate tax reported on the Estate Tax Return.

8. After taking into consideration the decision by the Kentucky courts that all of the assets that were transferred from George Hubert Hale to Minnie Hale pursuant to the Power of Attorney George Hubert Hale gave Minnie Hale, must be restored to the Estate of George Hubert Hale, the United States Tax Court determined that the Estate of Minnie Hale had no taxable estate for federal estate tax purposes and had no federal estate tax liability. This court further held that Minnie Hale did not make any taxable gifts of securities as shown on the gift tax return for the quarter ending June 30, 1972 and was not subject to any gift tax liability on said securities.

9. Thus, on July 15, 1982, the United States Tax Court held that the estate tax payment of $30,508.68, which the Estate of Minnie Hale made on October 28, 1976 was an overpayment. However, the Tax Court's decision did not provide that the gift tax of $30,502.77, which was paid on October 12, 1973, and was claimed as a credit against the total gross estate tax liability of $64,839.68, was also an overpayment.

10. On July 30, 1982 subsequent to the Tax Court's decision on July 15, 1982, but before it became final on October 13, 1982, the plaintiff filed formal claims for refund (Form 843) with the Commissioner for a refund of the gift tax payments totalling $30,502.77.

11. On September 14, 1983, the Commissioner denied plaintiff's claims for a refund on the grounds that they were received after the deadline for filing a claim for refund.

## DISCUSSION

Plaintiff asserts that the Commissioner erred in concluding that its claims for a refund of the gift taxes were not timely filed. To support this assertion, plaintiff advances alternative arguments, *viz.*, (1) the Estate's claim for a credit of $30,-502.77, as noted on the estate tax return filed on August 9, 1973, constituted sufficient notice of a claim for a refund of the $30,502.77; and (2) the time for filing of a

claim for this refund did not begin to run until the Tax Court issued its decision in *Estate of Minnie Hale v. Commissioner*, Docket No. 9431–76, on July 15, 1982. To reiterate, plaintiff's formal claims for a refund (Form 843) were filed on July 30, 1982.

Plaintiff relies on Section 6511 of the Internal Revenue Code of 1954 (Title 26 U.S.C.), which provides as follows:

SEC. 6511 LIMITATIONS ON CREDIT OR REFUND

> (a) *Period of Limitation on Filing Claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later ...

26 U.S.C. § 6511(a) (1976).

Based on this statute, plaintiff argues that the credit of $30,502.77 in gift taxes paid, as noted on the estate tax return filed on August 9, 1973, timely satisfied the "claim for credit or refund" requirement of Section 6511.

On the other hand, defendant takes the position that the Commissioner's decision was correct; therefore, this court has no subject matter jurisdiction over this action.

In support thereof, defendant also relies on and advances a different interpretation of Section 6511 of the Internal Revenue Code. Further, defendant looks to Section 7422 of the Internal Revenue Code of 1954 (Title 26 U.S.C.), which provides as follows:

SEC. 7422. CIVIL ACTIONS FOR REFUND

> (a) *No Suit Prior to Filing Claim for Refund.*—No suit or proceedings shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law

in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. Section 7422(a) (1976).

In a nutshell, defendant assumes that plaintiff did not timely file its claims for refund; therefore, under Section 7422, this court has no authority to hear plaintiff's claim.

Defendant argues that in order to comply with Section 6511(a), plaintiff ordinarily would have had to file a claim for refund of the gift taxes by August 9, 1976, the later period of three (3) years from the date of the filing of the gift tax returns. However, plaintiff consented to extending this period of limitations for filing claims for refund until January 1, 1980. Therefore, defendant submits that the claims for refund filed on July 30, 1982 are not timely.

For further support of its position that the refund claims were untimely filed, defendant also points to a letter dated July 26, 1976, from William G. Able, Chief of the Appellate Branch of the Internal Revenue Service, to the executor of the Estate suggesting that in order to protect its rights in relation to the quarters ending March 31, 1971, September 30, 1971 and July 30, 1972, the Estate should go ahead and file a claim for refund because the Estate's case could not be processed before the deadline for filing refund claims would pass. (Stipulation of Fact No. 28).

However, for the reasons set forth below, the court finds no merit in the defendant's position that the plaintiff's claims for refund of gift taxes were not timely filed.

### ANALYSIS

The record reflects that the Estate's gift tax return was filed on August 9, 1973 and the gift taxes were paid on October 12, 1973. The formal claims for refund were not filed until July 30, 1982; therefore, it is given that the formal claims for refund were not filed in strict compliance with the time limitation imposed by Section 6511(a).

Plaintiff rebuts the defendant's argument by referring the court to case law interpreting Section 6511(a), pointing out that there are circumstances when a taxpayer's *informal* claims for refund were shown to be sufficient to meet the jurisdictional prerequisite for a timely-filed claim for refund. These cases, as summarized below, are on point and most informative.

In *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941), the court was faced with a situation where a formal claim was not timely filed. Prior to the filing deadline, the *Kales* taxpayer had written a letter to the Commissioner advising him that if the Internal Revenue Service revised the valuation of certain stock, she would insist on a higher valuation and would claim the right to a refund. This taxpayer also subsequently filed an amended claim for refund.

In reaching its decision that the taxpayer's claim for refund should be honored by the Commissioner, the Court stated:

> This Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with the formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period. *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62 [53 S.Ct. 278, 77 L.Ed. 619]; *United States v. Factors & Finance Co.*, 288 U.S. 89 [53 S.Ct. 287, 77 L.Ed. 633]; *Bemis Bro. Bag Co. v. United States*, 289 U.S. 28 [53 S.Ct. 454, 77 L.Ed. 1011]; *Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 384 [53 S.Ct. 620, 624, 77 L.Ed. 1265]. This is especially the case where such a claim has not misled the Commissioner and he has accepted and treated it as such. (Citations omitted).

*U.S. v. Kales*, 314 U.S. at 194, 62 S.Ct. at 218.

Another case along this line is *American Radiator & Standard Sanitary Corpora-*

*tion v. United States*, 318 F.2d 915, 162 Ct.Cl. 106 (1963). The only issue before the court was whether the taxpayer's claim for refund of taxes was timely filed.

The background of *American Radiator* concerns a taxpayer's use of the "Lifo" inventory method during 1942, 1943 and 1945 and the involuntary liquidation of these inventories that the taxpayer experienced during these years. These inventories were replaced in later years, including 1949, at excess costs. After certain adjustments were made, American Radiator determined that it was entitled to refunds of income and excess profits taxes for 1942, 1943 and 1945.

American Radiator filed formal claims for refund of these overpayments in May 1953 and January 1954, more than three (3) years after the filing of its tax return on March 15, 1950. In 1958, the Internal Revenue Service rejected these claims as untimely.

The *American Radiator* court held that the refund claims were not untimely because the taxpayer and the Internal Revenue Service had agreed on extensions of time for the filing of refund claims. The court also held that another, independent basis existed for determining that the refund claim was timely, *viz.*, the taxpayer made a timely *informal* claim for refunds for the liquidation years (1942, 1943 and 1945) within three (3) calendar years of the filing of its tax return for 1949 (the replacement year).

On the subject of informal claims, the *American Radiator* court elaborated as follows:

> ... Informal refund claims have long been held valid (*United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941), and cases cited). But they must have a written component (Citations omitted) and they should adequately apprise the Internal Revenue Service that a refund is sought and for certain years. (Citations omitted).
>
> ... On the other hand, the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and con-

tent. The focus is on the claim as a whole, not merely the written component. (Citations omitted). In addition to the writing and some form of request for a refund, the only essential is that there be made available sufficient information as to the tax and the year to enable the Internal Revenue Service to commence, if it wishes, an examination into the claim.

*American Radiator*, 318 F.2d at 920.

The *American Radiator* court went on to state that:

... An informal claim which is partially informative may be treated as valid even though "too general" or suffering from a "lack of specificity"—at least where those defects have been remedied by a formal claim filed after the lapse of the statutory period but before the rejection of the informal request. *United States v. Kales, supra,* 314 U.S. at 194, 62 S.Ct. at 218. Plaintiff's formal refund claims (in May 1953 and January 1954) were admittedly complete and they were filed well before the rejections of all claims in 1955 and 1958. Any irregularities in the informal claim were thus cured retroactively. (Citations omitted). It is irrelevant that the formal demands did not refer to the informal claim and were not designated as amendments. Whatever the nomenclature, they supplied the missing information before the Revenue Service had rejected the informal claim, and were therefore equivalent to amendments in substance.

*Id.* at 921–922.

Additionally, the plaintiff relies on *Furst v. United States,* 678 F.2d 147, 230 Ct.Cl. 375 (1982), which also addresses the issue of what is required of the taxpayer to timely file a claim for refund.

*Furst* concerns the estate of Bette C. Graham, who invented and developed a secret formula for the correction fluid "Liquid Paper". Mrs. Graham and her husband formed the Liquid Paper Corporation in 1965; together they owned 90% of the company's stock.

The Grahams filed joint federal income tax returns for the years 1970–1974; on these returns the royalties received from the Liquid Paper Corporation were treated as long-term capital gain. The Internal Revenue Service audited the returns for the years 1972–1974 and contested the Grahams' treatment of royalties as long-term capital gain. The Internal Revenue Service took the position that these royalties should be treated as ordinary income.

On May 19, 1976, the Internal Revenue Service submitted a 30–day letter to the Grahams proposing income tax deficiencies for 1972–1974. The Grahams filed a protest letter with the District Director to these proposed deficiencies for 1972, 1973 and 1974.

Mrs. Graham also filed a claim for refund on Form 1040X for the year 1972, which the Internal Revenue Service rejected on June 22, 1977. Subsequently, the taxpayer filed suit in July 8, 1977 in the United States District Court for the Northern District of Texas for a refund of the taxes paid in 1972.

Thereafter, on November 2, 1977, in a letter by her attorney, the taxpayer requested the Internal Revenue Service to place its pending audit for the years 1975 and 1976 in abeyance until the tax litigation pending in the United States District Court was resolved. The Internal Revenue Service granted this request.

Subsequently, on June 28, 1978, the taxpayer filed an amended claim for refund on the year 1972; this form also referred to the years 1973 and 1974.

The tax litigation was resolved in the taxpayer's favor on March 7, 1979; thereafter, on September 28, 1979, the taxpayer filed formal claims for refund for the years 1973 and 1974.

The *Furst* court concluded that based solely on the statutory prerequisites [§§ 7422(a) and 6511(a)], the taxpayer did not timely file a formal claim for refund. However, the *Furst* court went on to hold that the taxpayer had timely filed an informal claim, as follows:

... It has long been recognized, however, that a formal claim for refund is not needed; all that is required is a time-

ly informal claim. *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). Such informal notice serves the same function as a formal refund claim, "to put the Commissioner on notice that a right is being asserted with respect to an overpayment of tax * * *." *Newton v. United States*, 143 Ct.Cl. 293, 299, 163 F.Supp. 614, 618 (1958). This enables the IRS, if it wishes, to begin an examination of the claim. *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 114, 318 F.2d 915, 920 (1963).

.     .     .     .     .

... It is all the facts and circumstances that will determine whether a timely informal claim for refund has been filed. *Furst*, 678 F.2d at 151–152.

Based on the three aforementioned cases, it seems that the test for what qualifies as an "informal claim" is one of all the surrounding facts and circumstances. *Furst*, 678 F.2d at 147. Therefore, the court must determine if the action of the taxpayer herein put the Internal Revenue Service on notice that a right was being asserted with respect to an overpayment.

The record reflects that when the Estate filed the tax return on August 9, 1973, it gave the Estate a credit for the $30,502.77 in gift taxes that the executor determined was owed by the Estate. Therefore, as of the date of filing of the Estate tax return (August 9, 1973), the Internal Revenue Service was on notice that the Estate did not intend to pay the total gross estate tax liability of $64,839.68. The Internal Revenue Service knew that the Estate was giving itself a credit for the gift tax liability.

Furthermore, by reason of the pending litigation in tax court (*Estate of Minnie Hale v. Commissioner*) the Internal Revenue Service knew that the Estate was contesting the Internal Revenue Service tax deficiency and was seeking a redetermination of the estate tax reported on the estate tax return. Therefore, there can be no doubt that the Internal Revenue Service was on notice that the Estate had asserted its right to a credit for the gift tax of $30,502.77.

Consequently, by virtue of the fact that the tax court held that the Estate had no federal taxable estate and no federal estate liability, with the exception for the credit applied to the estate tax return for Kentucky estate taxes paid in the amount of $3,828.23, the Estate was entitled to a refund of the entire gross estate tax liability.

The tax court followed the decision of the Kentucky courts that all of the property transferred from George Hubert Hale to Minnie Hale, by her Power of Attorney, must be restored to the Estate of George Hubert Hale. By reason thereof, Minnie Hale had no federal estate tax liability. Likewise, if the restoration of the assets to George Hubert Hale operated to eliminate the Estate of Minnie Hale and any consequent estate tax liability, the restoration of these same assets to the Estate of George Hubert Hale should also operate to nullify the transfers that Minnie Hale made to others, which resulted in the filing of the Estate Gift Tax return and the related gift tax liability of $30,502.77.

In short, the restoration of the assets to the Estate of George Hubert Hale should effectively eliminate both the estate and gift liability of the plaintiff. It is clear that there can be no transfer of a non-existent Estate; hence, there can also be no gift tax liability of a non-existent estate.

### DECISION

Based on a review of this record, in light of controlling precedent the court holds that the plaintiff timely filed an informal claim for refund of the gift taxes paid of $30,502.77. The credit for these gift taxes, as listed on the estate tax return was sufficient to put the Internal Revenue Service on notice that the plaintiff was asserting its rights in respect to these gift taxes. Further, the litigation in the United States Tax Court also served to give the Internal Revenue Service notice of the Estate's position on the estate and gift tax liability.

Upon the tax court's determination that Minnie Hale had no federal estate and no federal estate tax liability, the Internal Revenue Service erred in determining that

the plaintiff's claims for refund of the gift taxes were untimely filed.

The plaintiff's act of claiming a credit on the Estate Tax Return for $30,502.77 in gift taxes due and the plaintiff's act of filing an action in United States Tax Court were sufficient to informally notify the Internal Revenue Service that the plaintiff was asserting its right to these gift taxes.

Therefore, the court concludes that the plaintiff is entitled to a refund of these gift taxes in the amount of $30,502.77.

An order and judgment in accordance with this memorandum opinion will be entered on the same date herewith.

## ORDER AND JUDGMENT

In accordance with the memorandum opinion on the same date herewith,

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. The defendant's motion to dismiss this action or for summary judgment is DENIED;

2. Plaintiff's acts were sufficient to timely and informally notify the Internal Revenue Service that plaintiff was asserting its right to the gift taxes paid;

3. The plaintiff, Estate of Minnie Hale, is entitled to a refund of the gift taxes it paid on October 12, 1973;

4. The Internal Revenue Service is directed to refund to the plaintiff the gift taxes the plaintiff paid in the amount of $30,502.77, plus (a) applicable pre-judgment interest and (b) post-judgment interest at the rate of 7.20% per annum;

5. All claims having been resolved as to all parties, this action is now DISMISSED and STRICKEN from the docket;

6. There being no just reason for delay, this is a FINAL and APPEALABLE Order and Judgment.